UNITED STATES

v.

**VISA U.S.A. INC., Visa International Corp., and MasterCard International Inc.**

No. 98 Civ. 7076(BSJ).

United States District Court,
S.D. New York.

Nov. 29, 2001.

John M. Nannes, Melvin A. Schwarz, Joel I. Klein, Rebecca P. Dick, Susan L. Edelheit, Steven Semerano, Kurt Shaffert, Scott A. Scheele, Jeffrey I. Steger, Sean T. Fox, Ahmed Taha, M. J. Moltenbrey, United States Department of Justice, Washington, DC, for plaintiff.

Richard A. Martin, Heller, Ehrman, White McAuliffe, L.L.P., New York City, Eugene F. Bannigan, Morgan, Lewis & Bockius, New York City, Martin L. Seidel, Rogers & Wells, New York City, for defendants.

## OPINION

JONES, District Judge.

This civil action was brought by the Antitrust Division of the Department of Justice, Washington, D.C., against the defendants, VISA U.S.A. INC., ("Visa U.S.A."), VISA INTERNATIONAL CORP., ("Visa International") (collectively "Visa") and MASTERCARD INTERNATIONAL INCORPORATED, ("Master-Card"). The Government alleged, in two

counts, that each of the Defendants was acting in violation of Section 1 of the Sherman Antitrust Act, which provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is declared to be illegal." 15 U.S.C. § 1. Count One centered around the governance rules of Visa and MasterCard, which permit members of each association to sit on the Board of Directors of either Visa or MasterCard, although they may not sit on both. Count Two targeted the associations' exclusionary rules, under which members of each association are able to issue credit or charge cards of the other association, but may not offer American Express or Discover cards. For each Count, the Government bore the burden of demonstrating that the restraint has substantial adverse effects on competition.

In a Decision dated October 9, 2001, this court found (1) that the Government failed to prove that the governance structures of the Visa and MasterCard associations have resulted in a significant adverse effect on competition or consumer welfare; but (2) the Government successfully demonstrated that the exclusionary rules and practices of the defendants have resulted in such adverse effect and should be abolished. The Decision contained a Proposed Final Judgment and the parties were invited to submit to the court their comments and objections regarding this proposal.

Each of the parties to this action, as well as several non-parties, submitted proposed modifications to and additional comments regarding this court's Proposed Final Judgment. After full consideration of these submissions, this court makes the following findings and modifications:

### Anti–Discrimination Provisions

■ The Government, as well as Discover, urge this court to adopt "anti-discrimination provisions" that would prevent Visa or MasterCard from enacting or maintaining a rule or practice that treats a member bank's equity ownership in the other three general purpose card networks disparately. Under the Government's proposal, a Defendant would not be prevented from prohibiting or restricting its members from owning equity in any general purpose card network, so long as the defendant's rules did not discriminate among the networks. Although the court continues to believe that if and when a Defendant were to enact such a discriminatory rule or practice it would likely be anti-competitive, it may be challenged under Section III.C. of the Final Judgment. Since this Section broadly prohibits exclusionary issuing rules, more specific provisions are unnecessary.

### Dual Issuance of Debit Cards

Visa proposes that the final order be modified to permit Visa and MasterCard to prohibit dual issuance of debit cards in the United States so long as they do not discriminate between the different card networks. Visa currently has such a rule, pursuant to which banks issue either Visa off-line debit cards or MasterCard off-line debit cards but not both. Accordingly, as it now stands, Visa and MasterCard compete against each other for the entire debit card portfolio of each bank.[1] Visa seeks to preserve this form of off-line debit competition. Nothing in the court's Final Judgment, however, prevents that. Visa may continue to bargain for the exclusive debit business of a bank, just as it now bargains

---

1. MasterCard has no such rule and, consistent with its position that dual issuance of the associations' card products is pro-competitive, does not support this modification to the final order.

for exclusive issuance of its general purpose card products. The Final Judgment does not prohibit debit exclusivity by banks *if that is what they choose.* It simply prevents Visa from prohibiting its member banks from issuing another network's debit product under penalty of losing its rights to issue Visa debit products. The rationale behind this portion of the Final Judgment is simple: Since debit functionality is important to the growth of the proprietary networks and will likely be a key component of future general purpose credit card products, allowing exclusionary rules for debit cards would thwart the Court's remedy and, as such, cannot be permitted.

Visa also claims that this portion of the court's Final Judgment would "contravene the purport of the *Entree* litigation," which was settled by consent decree in May of 1990. In fact, that litigation focused on and ultimately prohibited a proposed joint Visa/MasterCard on-line debit product that the plaintiff States were concerned would blunt network competition between Visa and MasterCard. Visa is correct that as a part of the *Entree* decree, which expired in 1997, Visa and MasterCard were required to provide advance notice to the States if either one of them wished to create an on-line debit card program "in which duality is not expressly prohibited." Visa is also correct that in 1994, the States expressed concern that issuing duality would bring to an end the aggressive intersystem competition between Visa and MasterCard that had grown up in the wake of the settlement and the establishment of two independent point of sale debit card programs. *See* Letter from Joseph Opper to Carl J. Munson, Jr., dated October 27, 1994, reproduced in 159 American Banker No. 238, December 13, 1994. At the same time, however, the States recognized that "the debit card market is evolving and that the relevant facts may change so that the position we have reached may have to be reexamined." *Id.* Indeed, market conditions *have* changed since 1994. Today, the associations have largely separated through their negotiation of Partnership and Membership agreements, and competition between Visa and MasterCard has increased dramatically. Under these circumstances, rules and practices that prohibit dual issuance in debit are unnecessary and, as explained above, would be anti-competitive.

### Corporate and Small Business Cards

■ The court also rejects Visa's request, joined by MasterCard, to exclude corporate cards and small business cards from the remedy. According to Visa, because American Express enjoys a "dominant position" in those products, Defendants should be permitted to prohibit their members from issuing American Express brand corporate or small business cards. This court disagrees. Regardless of how dominant American Express' position is with respect to these particular products, Defendants have failed to demonstrate that barriers to entry exist which prevent banks from issuing corporate or small business cards. Indeed, Visa U.S.A.'s own expert suggests that barriers to entry for these products are low, and that U.S. Bank's entry into the corporate card business using Visa's network demonstrates that not only the networks but also any number of large Visa and MasterCard issuers could easily enter this product segment. *See* Tr. 6078:24–6080:06 (Schmalensee). The absence of such barriers to entry precludes the possibility that American Express could exercise anything approximating market power, however large its share of the corporate and small business segments may be. Permitting Visa and MasterCard to prohibit its issuers from using the American Express network

for these products simply shelters them from competition in those particular product segments. Finally, this court rejects Visa's suggestion that both corporate and small business cards are separate product markets for the purposes of this litigation. The general purpose card market is the relevant market for antitrust analysis in this case; small business and corporate cards are products that fall within that larger market. Visa's suggestion that corporate and small business cards should form their own separate markets is also completely at odds with Defendant's proposed market throughout this trial, which they broadly defined as consisting of cash, checks, credit and charge cards. Thus, for the reasons stated above, this court declines to permit Defendants to enact exclusionary rules relating to corporate and small business cards.

### Visa International

■ Visa International requests that it be deleted entirely from the Final Judgment. Specifically, Visa International argues that as a party found not to be liable, it should not be subject to any of the injunctive relief provisions contained within the Final Judgment. Although this court agrees that provision III.D. need not extend to Visa International (and the Final Judgment will be modified as such), this court rejects Visa International's request that it be omitted from the Final Judgment in all respects.

First, to clarify this court's ruling, because Visa International not only had the power to preempt Visa U.S.A.'s exclusionary rule, but also provided affirmative encouragement for the illegal bylaw, Visa International was in part responsible for the illegal rule and therefore is liable. Second, regardless of whether Visa International is found to be liable, the injunctive relief provisions to which it is subject are "minor and ancillary" and therefore appropriate. *EEOC v. Local 638,* 81 F.3d 1162, 1180 (2d Cir.1996) (*citing General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). Of the four provisions listed under "Prohibited and Required Conduct," Visa International is subject to only one, Section III.C.[2] Not only does this section fail to place "considerable burdens" on Visa International, see *Local 638,* 81 F.3d at 1180, but also it ensures effective relief by preventing Visa International from adopting at an international level a by-law that Visa U.S.A. would be prohibited from adopting itself.[3]

---

2. Section III.C, which enjoins Defendants "from enacting, maintaining, or enforcing any by-law, rule, policy or practice that prohibits its issuers from issuing general purpose or debit cards in the United States on any other general purpose card network." The remaining Section III provisions subject Visa U.S.A. and MasterCard to various forms of injunctive relief tailored to remedy the harms caused by the illegal exclusionary rules.

3. Significantly, the injunctive relief provisions to which Visa International is subject are far less burdensome than those at issue in *General Building* and *Local 638.* The decree in *General Building* required non-liable parties to meet certain "minority utilization goals," make quarterly reports detailing their compli-

ance and bear a share of the financial cost of implementing the injunction. 458 U.S. 375, 102 S.Ct. 3141, 3155. Similarly burdensome was the injunction in *Local 638,* which subjected non-liable contractors to significant reduction in hiring discretion and affirmatively imposed a "job rotation system" that, under certain conditions, required the contractors to layoff their workers and replace them with other workers, 81 F.3d 1162, 1180. By contrast, the injunction in this case requires no affirmative conduct on the part of Visa International, but rather merely prohibits it from circumventing the effect of this decision by using its authority to enact practices that this court has found to be anticompetitive.

### *Modifications to Section III.D.*

The defendants Visa and MasterCard correctly point out that Section III.D. of the Proposed Final Judgment would permit members to rescind their existing partnership/membership agreements for any reason or purpose. This was not the court's intention. Rather, the only purpose for the rescission provision was to permit issuers to enter into new American Express and Discover agreements without penalty. The court can think of no justification to relieve an issuer of its contractual obligations unless that issuer has an American Express or Discover agreement. The Government's suggestion "that issuers might elect to incur the costs of negotiating and executing agreements with American Express solely to avoid their existing dedication agreements with defendants" is wholly unpersuasive.

 American Express, as amicus curiae, requests that Section III.D. be modified to permit recision of agreements entered into with Visa or MasterCard during the appeals process (i.e., after the Final Judgment is entered). MasterCard and Visa agree with this suggestion only if the court also adopts Defendants' proposal to stay the operation of Sections III.B and III.C. According to Defendants, this is the only way to ensure that all parties remain in a true status quo position until all appeals are exhausted. This court declines to adopt either suggestion at this time. Because the Final Judgment calls for Defendants to repeal the offending rules by the effective date of the Final Judgment (regardless of whether appeals are taken), there is no sound basis for permitting the recision of agreements entered into after the Final Judgment but before the appeals process has ended. This is because any such agreements would be entered into in an environment free of the illegal exclusionary rules which necessitated the recision remedy in the first place. Because the court rejects American Express' proposal outright, the court need not consider Defendants' counter-proposal that III.B. and III.C. be stayed. Should Defendants' choose to move for a stay once the Final Judgment has been entered, the court will address the merits of such a motion at that time.

Finally, there appears to be some confusion regarding starting date and ultimate length of the recision period provided for in III.D. It is this court's intention that the recision period begin on the effective date of the Final Judgment *regardless of whether the parties appeal.* The recision period is to end either two years from the effective date of this Final Judgment or, if timely appealed, two years from the final order of the highest-level appellate court.

Therefore, in accordance with the determinations set forth above (including this court's decision to omit Visa International from the purview of this provision), Section III.D shall be modified to read as follows:

In the event that any issuing member enters into an agreement to issue American Express or Discover brand payment cards on those respective networks, for a period beginning on the effective date of the Final Judgment and ending either two years from the effective date of this Final Judgment or, if timely appealed, two years from the final order of the highest-level appellate court granting all or part of the relief in this section, Defendants Visa U.S.A. and MasterCard shall permit that issuer to terminate, without penalty, any agreement it entered into with that Defendant prior to the effective date of this Final Judgment, pursuant to which the issuer committed to maintain a certain percentage of its general purpose card volume, new card issuance or total number of cards in force in the United States on

that Defendant's network. Except that in the event of such termination, Defendants Visa U.S.A. and MasterCard may make application for the equitable return of any funds paid to the issuer but not yet earned under the agreement.

### *MasterCard Need Repeal the CPP Only Insofar as it Applies to Issuers*

Section III.B. of the Proposed Final Judgment requires MasterCard to repeal its Competitive Programs Policy ("CPP") in its entirety. The CPP, however, applies to both issuers and acquirers. Because the Government never attempted to prove that Defendants' merchant acquiring rules were anticompetitive, and because there is no evidence in the record to support the repeal of MasterCard's CPP insofar as it applies to acquirers, Section III.B. will be modified as follows: Defendant Master-Card International Incorporated shall repeal the Competitive Programs Policy insofar as it applies to issuers.

### *Ten–Year Term*

The following provision shall be added to the Final Judgment as Section V.D.: Unless this court grants an extension, the Final Judgment will expire by its own terms and without further action of this court ten (10) years from the date of its entry or, if timely appealed, ten years after the final order of the highest-level appellate court granting all or part of the relief set forth in the Final Judgment.

**SO ORDERED.**